(100 South. 253)

No. 24282.

## J. H. GARRISON & SON v. SHERILL HARDWOOD LUMBER CO.

(April 30, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Sales** ⬅418(2)—**Measure of damages for failure to deliver railroad ties sold stated.**

Damages recoverable for breach of contract to deliver railroad ties sold, where both parties are in default, are those contemplated when contract is made, and is the difference between contract price and market value at time and place for delivery.

**2. Sales** ⬅176(1)—**Performance of sales contract cannot be demanded after unreasonable delay and on advancing market.**

While putting in default is a condition precedent to recovery of damages and profits, where violation of contract is passive, in view of Civ. Code, arts. 1911, 1912, 1933, a creditor cannot be permitted to demand performance of contract after unreasonable delay and in face of advancing market, such damages being speculative, and not contemplated when contract was made.

**3. Sales** ⬅174—**No damages for nonperformance where plaintiff himself in default.**

A party cannot claim damages for nonperformance of contract as to which he himself is in default.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Jerry Cline, Judge.

Action by J. H. Garrison & Son against the Sherill Hardwood Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

S. W. Plauche, of Lake Charles, Ped C. Kay, of De Ridder, and S. W. Blount, of Nacogdoches, Tex. (S. W. Plauche, of Lake Charles, of counsel), for appellant.

Borah, Himel, Bloch & Borah, of Franklin, for appellee.

By Division B, composed of Justices DAWKINS, LAND, and LECHE.

LAND, J. The defendant company was formerly the Colfax Hardwood Lumber Company, and, under the latter name, entered into the following contract with plaintiffs, a commercial partnership, on February 2, 1917:

"Garrison & Sons, Garrison, Tex.—Gentlemen: ('Quotations subject to change without notice. All agreements subject to strikes, accidents and other delays unavoidable or beyond our control.')

"We offer as follows: 25,000 No. 1 white oak ties 6x8x8 at 40 cents f. o. b. cars, points on L. R. & N. Ry. between Winnfield, Aloha, Campti, and Alexandria, La.

"Time.—We will agree to deliver these ties as fast as weather will permit us producing.

"Inspection.—To be made at time of loading unless arrangements are made different in future.

"Payment.—Payment is to be made upon receipt of B/L. Should at any time we should have out on the railroad, loading spurs or switches as many as 5,000 ties, and we were unable to secure cars for this loading, we would then expect you to pay us as much as 80 per cent. of the contract price, the remainder when loaded. We mean by this that we would be willing to hold all ties, say from 4 to 6 weeks, before exacting this advance. If this proposition suits you, you will please sign under the word 'accepted' below, which will constitute contract between us."

On February 2, 1917, the Colfax Hardwood Lumber Company also made the following proposition to plaintiffs, which was accepted:

"In addition to the order to which we have entered for you to-day for 25,000 white oak ties, if you will agree to give us until next fall, say October 1st, 1917, we will furnish you 20,000 to 40,000 ties on the same conditions as outlined in this order of this date."

Plaintiffs charge defendant company with breaches of these contracts, and sue for damages for loss of profits. They allege that only 5,687 No. 1 white oak ties were delivered to their firm between February 22, 1917, and May 31, 1917, and that no more deliveries of ties were made under said contracts,

although defendant company was urged and requested to do so from time to time.

Plaintiff, however, did not put defendant company formally in default by written demand for compliance with these contracts, until August 28, 1918, or until nearly 11 months after October 1, 1917, the final date stipulated for delivery of all ties under the agreements between the parties. Moreover, plaintiffs were themselves in default for failure to pay upon receipt of bill of lading, as required by the terms of the contract, for 2,332 cypress ties and 493 No. 2 oak ties, which were delivered by defendant company, under agreement made subsequently to the contracts of February 2, 1917; said ties to be applied to, and accepted as deliveries under, the original contracts.

The price prevailing on the market at the date defendant company was put in default, August 28, 1918, was 83 cents per tie, or in excess of 43 cents above the contract price.

[1] We have repeatedly held that damages recoverable in such cases are those in the contemplation of the parties when the contract was made, and consist of the difference between the contract price and the market value at the time and place at which the goods were to be delivered. These ties had advanced in value from 42 cents to 68 cents per tie on October 1, 1917, the date of delivery fixed in the contract. As it would be both unfair and inequitable to allow plaintiffs to select a remote date upon a rapidly rising market, as the basis of the damages claimed, the putting of defendant company in mora on August 28, 1918, was nugatory, and of no effect. Monumental Brewing Co. v. Southern Rice Milling Co. (La.) 99 South. 401 [1] decided Feb. 18, 1924; Bonsor Co. v. Simon Rice Milling Co., 151 La. 1094, 92 South. 711; National Wholesale Grocery Co. v. Simon Rice Milling Co., 152 La. 2, 92 South. 713.

_____

[1] 155 La. 454.

Where the violation of the contract is passive, putting in default is a condition precedent to recovery of damages and profits. R. C. C. arts. 1912, 1933; Livingston v. Scully, 38 La. Ann. 781; Davis v. Glenn, 3 La. Ann. 444.

Where there is a passive breach, the debtor, it is true, may be put in default at or after the time stipulated for the performance by the act of the creditor, when he formally demands that the contract be carried into effect. R. C. C. art. 1911; Godchaux v. Hyde, 126 La. 190, 52 South. 269.

[2] However, the creditor cannot be permitted to demand the performance of the contract, after an unreasonable delay and in the face of an advancing market, as such damages are speculative, and were not in the contemplation of the parties at the time the contract was made.

[3] Nor can a party claim damages for the nonperformance of a contract as to which he himself is in default. Silverman v. Caddo Gas Co., 127 La. 928, 54 South. 289; Sitman & Burton v. Lindsey, 123 La. 53, 48 South. 646; Bryan v. Holland, 137 La. 512, 68 South. 845.

The judgment of the lower court rejected the demands and dismissed the suit of plaintiffs. We find no error in the judgment appealed from.

Judgment affirmed.

_____

(100 South. 287)